Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| HÉCTOR MERCADO CUEVAS<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | TA2025RA00315 | Revisión Administrativa procedente de Departamento de Corrección y Rehabilitación, División de Remedios Administrativos<br><br>Querella Núm.: CDB-598-23<br><br>Sobre: Solicitud de Remedio Administrativo |
|---|---|---|

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero

**Ortiz Flores, Jueza Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de diciembre de 2025.

Comparece por derecho propio y en *forma pauperis* ante este Tribunal de Apelaciones, el señor Héctor Mercado Cuevas (Sr. Mercado Cuevas; recurrente) mediante el recurso de epígrafe y nos solicita que ordenemos al Departamento de Corrección y Rehabilitación (DCR; recurrido) remunerar monetariamente al recurrente en concepto de compensación por trabajos realizados por este. Adicionalmente, el recurrente presentó una *Solicitud y Declaración para que se exima de Pago de Arancel por Razón de Indigencia*, la cual se declaró Ha Lugar en la *Resolución* emitida y notificada el 5 y el 6 de noviembre de 2025, respectivamente.

Adelantamos que, por los fundamentos que expondremos a continuación, confirmamos la decisión recurrida.

**I**

Según surge del expediente ante nuestra consideración, el Sr. Mercado Cuevas sometió una *Solicitud de Remedio Administrativo* el 26 de agosto de 2025 donde adujo que trabajaba en el área de la cocina por aproximadamente cinco (5) años donde se ha desempeñado como

"d[ish]wa[s]her, boilero [y en] mantenimiento".[1] Alegó además que por dicho servicio no ha recibido remuneración, por lo que reclamó en virtud de la Sección 16 de la Constitución del Estado Libre Asociado que se le pagara de manera retroactiva todos los años que ha sido trabajador en la cocina de la institución Bayamón 1072. Dicha solicitud recibió la respuesta correspondiente de parte de la Supervisora de la Unidad Sociopenal en la cual expresó que el "[c]onfinado fu[e] asignado por Comité a realizar labores en la cocina y no reciben remuneración monetaria".[2]

Inconforme con la mencionada contestación, el recurrente acude ante nosotros y realiza sus alegaciones. En vista de lo anterior, concedimos al Departamento de Corrección y Rehabilitación, por conducto de la Oficina del Procurador General (recurrido), hasta el 1 de diciembre de 2025 para presentar su posición en cuanto al recurso presentado. Luego de concedida una prórroga solicitada, el recurrido compareció mediante escrito titulado *Escrito en Cumplimiento de Orden* el 12 de diciembre de 2025. Así, el recurso quedó perfeccionado y nos encontramos en posición de resolver.

## II

### A

En nuestro ordenamiento jurídico, la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017 3 LPRA sec. 9601, *et seq.* (LPAU) es el estatuto aplicable a todos los procedimientos administrativos conducidos ante todas las agencias que no estén expresamente exceptuados por dicha ley. Véase sec. 1.4 de la LPAU, 3 LPRA. sec.9604. En lo pertinente, la sección 4.2 de la LPAU, 3 LPRA sec. 9672, dispone lo siguiente:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la sección 9655 de esta Ley, cuando el término

---

[1] Apéndice del recurso, Anejo 1.
[2] Apéndice del recurso, Anejo 2A.

para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.

Asimismo, la sección 4.5 de la LPAU, 3 LPRA sec. 9675, dispone en cuanto al alcance la revisión judicial, lo siguiente:

El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio. Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.

Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.

Se ha resuelto que los dos requisitos para que las órdenes emitidas por las agencias administrativas puedan ser revisadas por este Tribunal son los siguientes: que la resolución sea final y no interlocutoria, y que la parte adversamente afectada por la orden haya agotado los remedios provistos por la agencia. *Depto. Educ. v. Sindicato Puertorriqueño,* 168 DPR 527, 543 (2006) que cita a *Procuradora Paciente v. MCS,* 163 DPR 21, 34-35 (2004); *J. Exam. Tec. Méd. v. Elías et al., supra*, a la pág. 491.

La revisión judicial de las decisiones administrativas fue un procedimiento que se ideó como parte de un trámite apelativo dirigido a alcanzar el principio constitucional de mayor acceso a los tribunales. J. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, Ediciones SITUM, Inc., 2012, pág. 281. Así, "a través de la revisión judicial se controla la acción o inacción, de las agencias administrativas". *Id.* El propósito de la revisión judicial de las decisiones administrativas es que las agencias demuestren su razonamiento y los hechos en lo que basa sus decisiones y que demuestren que las mismas están dentro del ámbito del poder y la autoridad delegada en ellas. *Id.*, págs. 281-282. En este esquema, nos corresponde como tribunal fiscalizar con rigurosidad las decisiones administrativas para asegurarnos que las agencias cumplan con sus funciones y que no se pierda la fe en las instituciones de gobierno. *Id.*, pág. 282.

La revisión judicial de decisiones administrativas abarca esencialmente tres áreas: (1) la concesión del remedio apropiado, (2) la

revisión de las determinaciones de hechos de acuerdo con el criterio de evidencia sustancial, y (3) la revisión de las conclusiones de derecho. D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, FORUM, 2013, pág. 688. Ahora bien, es importante señalar que la revisión por parte de los tribunales en cuanto a las determinaciones de las agencias es limitada. La norma reiterada por nuestro Tribunal Supremo es que las decisiones de las agencias administrativas merecen deferencia judicial por la "vasta experiencia y conocimiento especializado sobre los asuntos que por ley se les ha delegado". *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177,186 (2009). Los tribunales debemos respetarlas **"a menos que la parte recurrente establezca que hay evidencia en el expediente administrativo suficiente para demostrar que la agencia no actuó razonablemente".** (Énfasis nuestro.) *Borschow Hosp. v. Jta. de Planificación*, 177 DPR 545, 566 (2009). Por ello, se ha planteado que "los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". *Otero v. Toyota*, 163 DPR 716, 727-728 (2005). Así pues, en nuestra función como tribunal revisor debemos limitar nuestra intervención a determinar si la actuación de la agencia fue una caprichosa, arbitraria, ilegal o que constituye un abuso de discreción por ser irrazonable. *Murphy Bernabé v. Tribunal Superior*, 103 DPR 692, 699 (1975). Lo anterior responde a que "los procedimientos ante un organismo administrativo tienen a su favor una presunción de regularidad y corrección". *A.D.C.V.P v. Tribunal Superior*, 101 DPR 875, 889 (1974). No obstante, ello no constituye un ejercicio automático.

Por otro lado, en cuanto a la revisión de conclusiones de derecho, la norma es que son revisables en todos sus aspectos por este Tribunal. *Olmo Nolasco v. Del Valle Torruella*, 175 DPR 464, 470 (2009). Sin embargo, en *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR ___ (2025), el

Tribunal Supremo de Puerto Rico revisitó la deferencia que, según la LPAU, *supra*, los foros judiciales le deben otorgar a las conclusiones de derecho provistas por las agencias administrativas. Lo anterior, a la luz del marco jurídico provisto por el Artículo 4.5 de la LPAU, *supra*, sec. 9675, y lo resuelto por el Tribunal Supremo de los Estados Unidos en *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).

En reiteradas ocasiones, nuestro máximo foro había sostenido que las conclusiones e interpretaciones de las agencias merecían gran consideración, y que la revisión judicial se limitaba a determinar si estas habían actuado arbitraria o ilegalmente. *Vázquez v. Consejo de Titulares*, *supra,* pág. 31. A pesar de lo anterior, advirtió que esta consideración no equivalía a una renuncia de nuestra función revisora, sino que la interpretación de la ley "es una tarea que corresponde inherentemente a los tribunales". *Vázquez v. Consejo de Titulares*, *supra,* pág. 32. Además, expuso que, aunque el Artículo 4.5 de la LPAU, *supra*, sec. 9675, dispone que las conclusiones de derecho "serán revisables en todos sus aspectos por el tribunal", será deber de los tribunales revisar las conclusiones de derecho de las agencias en todos sus aspectos, guiados por los mecanismos interpretativos propios del Poder Judicial y no por la deferencia automática a las agencias. *Vázquez v. Consejo de Titulares*, *supra,* págs. 31-32.

**B**

El 22 de junio de 2000 se adoptó el *Manual de Normas y Procedimientos para la Oportunidad de Empleo y Trabajo para Miembros de la Población Correccional*, Núm. AC-PROG-009 (Manual de Normas) al amparo de la *Ley Orgánica de Administración de Corrección*, 4 LPRA sec. 1101 et seq. con el propósito de "proveer a los miembros de la población correccional experiencias de trabajo o empleo remunerado para fortalecer su autoestima, combatir el ocio y proveerles de experiencias y destrezas que viabilicen su rehabilitación". En lo pertinente, dicho Manual establece en su Sección III, inciso B que "[l]a participación del miembro de la

población correccional en programas de trabajo será estrictamente voluntaria, pero la selección y naturaleza del trabajo quedará a discreción del Comité de Clasificación y Tratamiento (en adelante Comité)". De igual manera, en el inciso G de la precitada Sección, también se establece en cuanto a los salarios lo siguiente:

G. Jornal o Salario

1. Se pagará a los miembros de la población correccional según establezca el (la) Administrador(a) **mediante orden administrativa** a tales efectos, a excepción del salario o jornal que devenguen los miembros de la población correccional en programas de la CEAT o en programas especiales en la comunidad. (Énfasis nuestro.)

**III**

En su solicitud de revisión judicial, el Sr. Mercado Cuevas aduce que no se le ha remunerado por la labor que desempeña en el área cocina desde hace cinco años aproximadamente. En su escrito también acompaña su historial de transacciones desde el 1 de julio de 2021 hasta el 28 de agosto de 2025 donde señala que los únicos dos pagos que llegó a recibir fueron el 12 de mayo de 2021 y el 9 de junio de 2021. Dichas transacciones llevan el título de "NÓMINA DE FEBRERO COCINA" y "NOM DE MARZO/21" respectivamente. En base a lo anterior alega que se ha desempeñado como dishwasher, boilero y mantenimiento. No obstante, no incluye prueba que constate que en efecto trabajó el tiempo que alega ni la calidad en que lo realizó. Esto último es de especial importancia puesto que no toda labor es remunerada. Tal y como reseñamos en el derecho aplicable, el Manual de Normas establece que las labores que recibirán remuneración monetaria son solo aquellas que se designen mediante orden administrativa. Surge del expediente que en la Orden Administrativa Núm. DCR-2014-04 titulada *Actualización de Compensación a Confinados* incluye un listado de las labores a ser compensadas y el valor de dicha labor. En la mencionada lista solo mencionan como labores remuneradas concernientes al área de cocina la labor de cocinero y ayudante de cocinero. Nada menciona en cuando a lavaplatos, boilero o mantenimiento de cocina. Igualmente ocurrió con las actualizaciones posteriores en el año

2016 y 2025. Por ello, resulta correcto y fiel al Manual de Normas la respuesta recibida por el recurrente.

El Memorando Normativo Núm. AC-2008-03 titulado *Procedimiento de Compensación a Confinados* establece en su Sección IV (1) que "[t]oda reclamación de compensación de nómina de confinados o cobro por factura de venta en la tienda, deberán ser sometidas por los confinados a las Unidades de Cuentas **en o antes de noventa (90) días laborables, a partir de la fecha de la transacción".** (Énfasis nuestro.) El inciso (3) de la Sección mencionada igualmente añade que "[l]as reclamaciones que se sometan posterior al período de noventa (90) días no serán procesadas".

A la luz de lo expuesto y luego de examinar el expediente del caso resolvemos que no surge de los autos prueba alguna que respalde las alegaciones del recurrente o que tienda a indicar que el DCR actuó irrazonablemente. Acorde con lo intimado anteriormente, los procedimientos administrativos gozan de una presunción de corrección que los tribunales revisores deben respetar, salvo que se demuestre lo contrario mediante prueba. En ausencia de prueba que demuestre la falta de razonabilidad en cuanto a la determinación recurrida, prevalece la presunción de corrección de los procedimientos administrativos llevados a cabo por el DCR, por lo que debemos confirmar.

**IV**

Por los fundamentos que nos anteceden, se confirma la decisión recurrida.

**Notifíquese.**

Lo acuerda y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones